## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Eniva Corporation,                                    Civil No. 05-1298 (DWF/JJG)

             Plaintiff,

                                                       **MEMORANDUM**
                                                   **OPINION AND ORDER**

Global Water Solutions, Inc. and
Norland International, Inc.,

             Defendants,

_____

Robert L. Meller, Jr., Esq., and Jason C. Tarasek, Esq., Best & Flanagan, LLP, counsel for Plaintiff.

Erin C. Skold, Esq., and Susan M. Robiner, Esq., Leonard, Street, and Deinard, PA, counsel for Defendants.

_____

This matter came before the Court on June 16, 2006, pursuant to Defendants' Motions for Summary Judgment, to Exclude Plaintiff's Expert Reports, and for Sanctions. Plaintiff Eniva Corporation ("Eniva") brought this action against Defendants Global Water Solutions, Inc. ("Global") and Norland International, Inc. ("Norland") (collectively, "Defendants"), alleging trademark infringement and other related claims. For the reasons set forth below, the Court denies the Motion for Summary Judgment, denies as moot the Motion to Exclude Plaintiff's Expert Reports, and denies the Motion for Sanctions.

## BACKGROUND

### I.     The Parties

Eniva is a Minnesota-based company that distributes and sells nutritional products through multi-level marketing channels via its 150,000 "members."  Eniva's members sell its products through various outlets, including trade shows, meetings, radio advertising, and some retail stores.

Since August 2003, Eniva has sold a liquid dietary supplement[1] under the trademark VIBE.  VIBE's instructions state that the supplement should be taken in limited doses, based upon body weight.  The supplement can be purchased in two types of packages:  a 32-ounce yellow plastic bottle or a 1-ounce single-serving pouch.  In addition to VIBE and other wellness products, Eniva sells bottled water under the trademarks OHM and ATHLETIC EDGE.

Eniva selected the VIBE mark because it connotes a vibrant life and because it relates to the way the supplement is blended.  On March 16, 2004, Eniva submitted an application to the United States Trademark and Patent Office ("USPTO") to federally register the mark VIBE.  The application was for a "Blended Liquid Mineral and Vitamin Nutritional Dietary Supplement" in International Class 5, the class designated for pharmaceuticals.  On September 24, 2004, the USPTO issued an adverse office action, refusing registration due to likelihood of confusion with the federally registered mark

---

[1]     To bolster its likelihood of confusion argument, Eniva repeatedly describes its product as "structured water," claiming that it only refers to VIBE as a supplement when required to do so by the U.S. Food and Drug Administration.  This exercise in semantics is unconvincing and detracts from the focus of confusion as to source or origin.

EYE-VIBE.  On March 14, 2005, Eniva responded to the office action, and on

November 15, 2005, the USPTO registered the mark VIBE.  Eniva also has a state

trademark registration for the trademark VIBE, which was issued on May 19, 2005.

Global is a start-up company based in Colorado.  In March 2005, it began

marketing and selling "pure bio-energized" drinking water that has been

"vibrationally-infused" with "original Himalayan crystal salt."  Norland is a

Nebraska-based company that manufactures and sells water purification and bottled water

equipment.  It is the exclusive bottler for Global.  Defendants' bottled water can be

purchased in retail stores, through Global's website, or by calling Global's toll-free

number.

At first, Defendants selected the mark VIBE IN TUNE WITH YOUR LIFE for

their water because Defendants believed that the mark expressed the special qualities of

the product.  Defendants' counsel conducted a trademark search and informed

Defendants that the mark was available for registration.  On March 8, 2005, Defendants

submitted their trademark application for the mark to the USPTO for "non-alcoholic

beverages and drinks, namely bottled drinking water; packaged drinking water" in

International Class 32.   The mark was registered on March 7, 2006.

After this action commenced, Defendants decided to discontinue using the mark

VIBE IN TUNE WITH YOUR LIFE and instead chose to use the mark AQUAVIBE.[2]

---

[2]    Eniva makes little distinction between Defendants' use of VIBE IN TUNE WITH
YOUR LIFE and AQUAVIBE.   For the purposes of this motion, then, the Court will
focus on the mark AQUAVIBE.

They submitted a trademark application to the USPTO for the mark AQUAVIBE on October 17, 2005, and the USPTO published it for opposition on July 11, 2006.

## II.    The Water Conference

On April 15-17, 2005, Linda Hanson, one of Eniva's members, attended an educational conference called "Bridging the Water Gap" in Hopkins, Minnesota.  The events at that conference precipitated the current suit.  Hanson attended the conference to sell Eniva's OHM water and to give away samples of VIBE supplements.  Global's founder, Chris Winters, Global's president, Diane Winters, and one of Defendants' former investors, David Watson, also attended the conference to promote Defendants' bottled water.

In the parking lot on the first day of the conference, a third party approached Hanson, who was carrying VIBE boxes, to tell her that someone else was at the conference selling VIBE water.   Hanson was upset to learn that another Eniva member was at the conference selling Eniva's water.  When she entered the conference, however, Hanson learned that the third party had been talking about Defendants, who were at the conference to sell their own water, rather than another Eniva member.  According to Hanson, during the conference less than five people asked her about the affiliation between Eniva's supplement and Defendants' water.  Moreover, Hanson does not believe that she lost any sales due to Defendants' presence at the conference, and she believes that Eniva's supplement and Defendants' water are different products.

After the conference, a potential customer, Betty Gustafson, called Defendants and asked them about Eniva's supplement.  In response, Defendants sent Gustafson some

bottles of water. In addition, sometime after the conference, Defendants wrote to Eniva, proposing a partnership between the two companies.  Eniva rejected that proposal.

## III.   The Present Action

On May 27, 2005, Eniva commenced this action in Minnesota state court, and Defendants removed the case to federal court.  Eniva asserts four claims against Defendants:  (1) unfair competition under the Lanham Act; (2) trademark infringement under Minnesota law; (3) violations of the Minnesota Deceptive Trade Practices Act ("MDTPA"); and (4) common law unfair competition.

## DISCUSSION

## I.   Motion for Summary Judgment

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence and the inferences, which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enterprise Bank v. Magna Bank of Missouri,* 92 F.3d 743, 747 (8th Cir. 1996).   However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enterprise Bank,*

92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.   *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Defendants assert that summary judgment on all of Eniva's claims is appropriate for two reasons.  The Court will discuss each in turn.

### A.      Prosecution/Judicial Estoppel

First, based on the arguments Eniva made to the USPTO, Defendants assert that they are entitled to summary judgment because Eniva should be estopped from asserting that there is likelihood of confusion between VIBE and AQUAVIBE.   Specifically, Defendants take issue with Eniva's response to the adverse office action that initially refused registration of Eniva's VIBE mark due to likelihood of confusion between Eniva's mark and the federally registered mark EYE-VIBE.  The mark EYE-VIBE is used in connection with a daily vitamin supplement formulated to enhance eye health.

In response to the adverse office action, Eniva argued that there was no likelihood of confusion between the marks VIBE and EYE-VIBE because the products, the marks themselves, the connotations of the words, the commercial relationship between the products, and the marketing of the products were different.   Defendants assert that these exact same arguments can be used to distinguish VIBE from AQUAVIBE.  For this reason, Defendants seek to preclude Eniva from making arguments contrary to the

position it took in its response to the adverse office action.  If Eniva is precluded from making such arguments, Defendants assert that they are entitled to summary judgment because Eniva cannot establish likelihood of confusion between VIBE and AQUAVIBE.

Defendants seek to apply by analogy the doctrine of prosecution history estoppel that governs patent cases and prevents a patent owner from arguing a position contrary to what the owner argued in the prosecution of the patent.  *See generally Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 30 (1997).  The parties did not cite, and the Court could not find, a case in this Circuit that addresses this issue.  Instead, Defendants rely on *Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.*, 333 F. Supp. 2d 239 (D. Del. 2004), a case that involved allegations of infringement related to the marks CHASE FREEDOM and FREEDOM CARD for credit card services.

In that declaratory judgment case, when evaluating the degree of similarity between the trademarks at issue, the court judicially estopped the defendant from making arguments relating to the word "freedom" that were contrary to those it made in front of the USPTO.  *Chase*, 333 F. Supp. 2d at 246.   The Third Circuit affirmed the district court's decision, explaining "[w]hether we view the district court's treatment of [the defendant's] prior representations about the commercial availability of marks containing the word 'freedom' as judicial estoppel, an admission, waiver, or simply hoisting [the defendant] by its own petard, we agree with the district court's conclusion . . . [The defendant's] own statements and actions, together with [the plaintiff's] undisputed evidence of the widespread and common use of "freedom," undermine [the defendant's]

7

belated attempt to establish likelihood of confusion . . . ." *Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 476 (3d Cir. 2005).

The doctrine of prosecution history estoppel is not an absolute rule in trademark law. *See* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 32.111 (4th ed. 1998). The few courts that have allowed the use of statements made to the USPTO generally consider them only as one factor used to evaluate whether likelihood of confusion exists. *Id*. The courts that have disallowed the use of such statements focus on the fact that statements made to the USPTO do not bind registrants for all time. *Id*.

Unlike patents, trademarks are dynamic in that they can gain or lose strength over time. As such, arguments made with respect to a certain trademark also may change over time. At this stage in the proceedings, viewing the evidence in the light most favorable to Eniva, the Court declines to find that Eniva is estopped from making arguments contrary to those it presented to the USPTO in response to the adverse office action. Defendants, however, are free to raise this issue again at trial.

## B.  Likelihood of Confusion

Second, Defendants assert that they are entitled to summary judgment because Eniva cannot establish a likelihood of confusion between Eniva's VIBE and Defendants' AQUAVIBE. To prevail on the merits of its Lanham Act claim,[3] Eniva must prove

---

[3]     In Count I, Eniva alleges a violation of section 43(a) of the Lanham Act. It appears from Eniva's motion papers that it is now pursing its Lanham Act claim under section 32 of the Lanham Act, presumably because its VIBE mark is now federally

(Footnote Continued on Next Page)

(1) ownership of a valid trademark; and (2) likelihood of confusion between Eniva's

mark and Defendants' mark.  *First Bank v. First Bank Sys., Inc.,* 84 F.3d 1040, 1044 (8th

Cir. 1996).  Defendants do not challenge the ownership of Eniva's mark, which it has

used since 2003 and is now federally registered.  Thus, for the purposes of this motion,

the parties agree that this case revolves around the "likelihood-of-confusion" issue.  The

parties also agree that all of Eniva's claims involve a likelihood-of-confusion analysis.

*See Minneapple Co. v. Normandin*, 338 N.W.2d 18, 22 (Minn. 1983) (explaining that

Minnesota trademark statutes, Minn. Stat. §§ 333.18-31, are modeled after the Lanham

Act and noting that likelihood of confusion is an element of common law unfair

competition) and *Woodroast Sys, Inc. v. Restaurants Unlimited, Inc.*, 793 F. Supp. 906,

917 (D. Minn. 1992) (stating that in trademark context, the MDPTA mirrors the Lanham

Act with respect to likelihood of confusion).

Trademark law protects an owner against use of its mark on any product or service

that would reasonably be thought by the buying public to come from the same source.

4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 24.6 (4th

ed. 1998).  Thus, the test of likelihood of confusion encompasses any type of confusion,

including confusion as to origin, source, sponsorship, affiliation, or connection.  *Id*.  At

oral argument, Eniva agreed with the Court that the ultimate issue here is whether

---

(Footnote Continued From Previous Page)
registered.  Here, the distinction is academic because both claims are measured by
identical "likely to cause confusion" standards.  *See* 15 U.S.C. §§ 1114, 1125(a)(1)(A);
*see also A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 202 (3d
Cir. 1999) (discussing likelihood of confusion standards under sections 32 and 43(a) of
the Lanham Act).

Defendants' mark so resembles Eniva's mark that it is likely to cause confusion as to whether Eniva somehow sponsored or endorsed Defendants' water. *See Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 398 (8th Cir. 1987).

When evaluating likelihood of confusion, a court must consider:  (1) the strength of the infringed trademark; (2) the similarity between the plaintiff's and defendant's marks; (3) the competitive proximities of the parties' products; (4) the alleged infringer's intent to confuse the public; (5) the evidence of actual confusion; and (6) the degree of care reasonably expected of potential customers. *See SquirtCo. v. Seven-Up Co.,* 628 F.2d 1086, 1091 (8th Cir. 1980).  While none of these factors is dispositive, a court must use the factors at the summary judgment stage "as a guide to determine whether a reasonable jury could find a likelihood of confusion." *Duluth News-Tribune,* 84 F.3d at 1096.

### 1.     Strength of the Trademark

Two factors measure a mark's strength:  "the distinctiveness of the mark and the extent to which the mark is recognized by the relevant consumer class." *Aveda Corp. v. Evita Marketing, Inc.,* 706 F. Supp. 1419, 1428 (D. Minn. 1989).  Describing itself as the "Pepsi of the wellness industry," Eniva asserts that VIBE is arbitrary because it does not describe Eniva's product, and as such, it is entitled to the highest level of protection. Eniva presents no evidence that the relevant consumer class recognizes the mark; instead, it asserts that no such evidence is needed because the mark is arbitrary.  Conversely, Defendants assert that VIBE is a descriptively weak mark entitled to the lowest level of protection because the term "vibe" is used throughout the wellness industry.

Viewing the evidence in the light most favorable to Eniva, the Court concludes that, at most, the mark VIBE is suggestive of the feeling a consumer will get after taking the supplement. *See Duluth News-Tribune,* 84 F.3d at 1096 (explaining that a suggestive mark is one that requires some measure of imagination to reach a conclusion regarding the nature of the product). However, because Eniva has presented no evidence that the relevant consumer class recognizes its mark, the Court finds that this factor weighs in favor of neither party.

### 2.      Similarity Between the Trademarks

In analyzing the similarity of the marks, a court must look to the overall impression created by the marks, not to the individual features of the marks. *Id*. at 1097. Viewing the evidence in the light most favorable to Eniva, the Court concludes that a reasonable fact finder could conclude that the marks are similar, especially given the overall impression created by both marks' use of a large blue "V." Accordingly, this factor favors Eniva.

### 3.      Competitive Proximities of the Products

Eniva claims that both parties sell "structured water, with similar properties, similar health benefits, to the same customer base through the same marketing channels." Defendants respond by arguing that there is no competitive proximity between supplements and drinking water.

The Court notes that the two products are not in direct competition. A showing of direct competition, however, is not required, because this factor requires a broader examination of the products' relationship in the market. *Kemp v. Bumble Bee Seafoods,*

*Inc.*, 398 F.3d 1049, 1056 (8th Cir. 2005).   "Where products are wholly unrelated, this factor weighs against a finding that confusion is likely.  Where products are related, however, it is reasonable for consumers to think that the products come from the same source, and confusion, therefore, is more likely."  *Id*.  Here, the record reflects a possible connection as to origin between supplements and water in the wellness market. However, this connection is somewhat negated because Eniva sells its products through multi-level marketing whereas Defendants sell their water through retail outlets. However, viewing this evidence in the light most favorable to Eniva, the Court finds that this factor weighs in Eniva's favor.

### 4.      Intent to Confuse the Public

Eniva asserts that Defendants' intent to confuse can be shown in their choice of website address (www.vibewater.com) and telephone number (1-800-518-VIBE).  In addition, Eniva focuses on the fact that Internet search engines list Global first when "vibe and water" is entered as a search.  Finally, Eniva notes that Defendants knew of the VIBE supplement when they submitted their trademark application for VIBE IN TUNE WITH YOUR LIFE and when they chose the mark AQUAVIBE.

In response, Defendants explain that they selected their mark to connote the "vibratory signatures" of their water.  They assert that they acted in good faith because they retained trademark counsel to conduct a trademark search prior to their use of either mark.  In addition, they note that they have changed their website address (www.drinkaquavibe.com) and their telephone number (1-800-518-8423).  Finally,

Defendants point out that Internet search engines list Eniva first when "vibe and supplement" is entered as a search.

Viewing this evidence in the light most favorable to Eniva, a reasonable fact finder could conclude that Defendants intended to infringe Eniva's mark.[4]   Accordingly, this factor weighs in Eniva's favor.

### 5.    Evidence of Actual Confusion

The fifth factor gives weight to the number and extent of instances of actual confusion.  *Duluth News-Tribune,* 84 F.3d at 1098.   Eniva asserts that there are many instances of actual confusion, as shown by Hanson's experience at the water conference and the Gustafson call.  In response, Defendants point out that Hanson testified that she was not confused and any discussion about the persons Hanson talked to is inadmissible hearsay.

When evaluating evidence at the summary judgment stage, only admissible evidence is considered.  Fed. R. Civ. P 56;  *Duluth News-Tribune,* 84 F.3d at 1098.  At this stage, even assuming the evidence Eniva has is admissible, Eniva has presented no more than a scintilla of evidence based on ambiguous testimony of interested persons. *See Frosty Treats, Inc. v. Sony Computer Entertainment America Inc.*, 426 F.3d 1001,

---

[4]    As an alternative to summary judgment, Defendants request a ruling that Eniva cannot seek profits from Defendants because there is no evidence Defendants willfully infringed Eniva's trademark.  Viewing, as it must, the evidence in the light most favorable to Eniva, the Court finds that there are genuine issues of material fact with respect to willfulness that preclude summary judgment on this issue.

1008 (8th Cir. 2005).  Without more, the Court finds that this factor weighs in

Defendants' favor.

### 6.     Degree of Care of Potential Customers

In evaluating the sixth factor, a court looks to the degree of care expected of an

ordinary purchaser.  *See Duluth News-Tribune,* 84 F.3d at 1099.  Because the products at

issue are inexpensive in comparison to the price of a car, Eniva asserts that potential

customers will exercise a low degree of care in selecting either of the parties' products.

Defendants respond that the ordinary purchaser will exercise a high degree of care in

purchasing the respective products, given that Eniva's supplements are primarily sold in

face-to-face meetings and Defendants' water is sold at retail stores.

Eniva's argument is unconvincing.  The cost of the parties' products, when

compared to the cost of other supplements and bottles of water, is relatively high.

Moreover, consumers in the niche wellness market likely use care when selecting

health-based products.   Considering the foregoing and the channels in which the

products are sold, the Court finds that this factor favors Defendants.

In sum, because three of the likelihood of confusion factors favor Eniva, the Court

concludes that genuine issues of material fact exist that preclude summary judgment.

Therefore it denies Defendants' Motion for Summary Judgment.   A denial of a summary

judgment motion, however, does not equate to a victory at trial or rule out the possibility

of a subsequent Rule 50 motion.  *See* Fed. R. Civ. P. 50(a).  The Court notes that Eniva's

evidence, which includes isolated incidents of confusion and no survey evidence, is only

minimally sufficient to establish a genuine issue of material fact with respect to likelihood of confusion.

## II.     Motion to Exclude Plaintiff's Expert Reports

In connection with their opposition to the Motion for Summary Judgment, Eniva submitted reports from two experts, John A. Clifford and Terry Gruggen.  Defendants seek to exclude these reports under Rules 702 and 703 of the Federal Rules of Evidence, arguing that the content of the reports exceeds the experts' areas of expertise.  In response, Eniva explains that the reports include descriptions of what the experts "might" testify about and, as such, the motion to exclude is premature because no expert depositions have been taken.  In addition, Eniva asserts that the experts are qualified to render the opinions contained in their reports.

At the threshold, the Court rejects Eniva's argument that the motion is premature. One of the purposes of the expanded disclosure requirement for expert reports is to provide in substance the expert's direct testimony at trial.  This requirement is intended to allow the opposing party, if he or she chooses, to dispense with the expert's deposition. *See* Advisory Committee Notes to 1993 Amendments to Rule 26(a)(2). Therefore, the fact that the experts' depositions have not been taken is not fatal to Defendants' motion.

Under Rule 702, proposed expert testimony must satisfy three prerequisites to be admitted.  *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).  First, the evidence based on scientific, technical, or specialized knowledge must be useful to the fact finder in deciding the ultimate issues of fact.  *Id*.  Second, the proposed witness must be qualified.  *Id*.  Third, the proposed evidence must be reliable or trustworthy in the

evidentiary sense, so that if the fact finder accepts it as true, it provides the assistance the fact finder requires.  *Id*.  The district court has a "gatekeeping" function to make it certain that all testimony admitted under Rule 702 "is not only relevant, but reliable."  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591-92 (1993).

The Court does not need to perform any gatekeeping function at this stage because it did not rely on the experts' reports when reaching its decision on the summary judgment motion.  Therefore, the Court denies as moot Defendants' Motion to Exclude.  Of course, Defendants are free to raise this issue again in a *Daubert* motion at trial.

## III.   Motion for Sanctions

Defendants move for sanctions against Eniva based on Eniva's conduct related to the preparation and handling of Hanson's witness statement.  Hanson was the Eniva member who attended the water conference and was approached by third parties who were confused about the connection between Eniva VIBE and Defendants' water.

The following facts are based on the record before the Court.  Shortly after the water conference, Eniva's counsel contacted Hanson to ask her about her experience at the water conference.  Based on their conversations, Eniva's counsel drafted and sent a witness statement to Hanson for her to sign.   According to Hanson, when she received the statement, she noticed several errors so she corrected those errors and returned the statement to Eniva's counsel.   Specifically, Hanson testified that she changed numerous items relating to events at the water conference and Eniva's products, including changing the phrase "VIBE water" to "VIBE supplement" throughout the statement.  She made

these changes because she did not consider VIBE to be a type of water and because she attended the conference to sell Eniva water, not the VIBE supplement.

Eniva's counsel then made some changes to the statement and sent Hanson a new draft of the witness statement.   The phrase "VIBE water" appeared throughout the second draft, as did other statements about confusion that Hanson had corrected in the first draft.  Hanson once again made her changes, including changing all of the uses of "VIBE water" to "VIBE supplement."  This time, however, she signed her edited second draft of the witness statement.  Eniva's counsel acknowledges receiving a signed copy of the witness statement and an undated letter that stated "I want this to reflect an honest description of what took place and also the wording is important to me . . . .  If you make the changes on page 1 & 2, I do not need to sign it again."   However, counsel claims that it does not have a copy of Hanson's edits.

Eniva's counsel then sent a third version of the witness statement to Hanson, attaching the signed last page to an uncorrected version of the witness statement. Hanson did not respond to the third draft.  At her deposition, she objected to the third draft of the witness statement and produced a copy of a draft of the witness statement with her changes on it.

Because Hanson's testimony goes to the heart of the confusion issue, Defendants seek sanctions for Eniva's conduct of producing the unedited version of Hanson's statement.  Specifically, under Rules 26 and 37 of the Federal Rules of Civil Procedure, Defendants seek dismissal and/or an award of fees and costs associated with bringing the motion.  Eniva responds with a no harm, no foul argument, claiming that Hanson's edits

17

were "insignificant" and "irrelevant" and that the counsel believed the version produced was an "accurate representation" of Hanson's statements.

The power of a court to impose sanctions for discovery abuses arises from two distinct authorities. The Federal Rules of Civil Procedure provide for sanctions when a party submits false certifications, fails to respond to discovery requests, or fails to comply with a court order regarding discovery. *See* Fed. R. Civ. P. 26 and 37. A court may also impose sanctions based on its inherent power to "fashion an appropriate sanction for conduct which abuses the judicial process." *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 745 (8th Cir. 2004).

Contrary to Eniva's assertion, this is not a no harm, no foul situation. It is true that Hanson's deposition cleared up any misstatement made in the witness statement. That fact, however, does not negate the fact that the integrity of the discovery process has been compromised by Eniva's actions. Such conduct can indeed be considered sanctionable. *See e.g., Jaen v. Coca-Cola Company*, 157 F.R.D. 146 (D.P.R. 1994). Both the Federal Rules of Civil Procedure and the Rules of Professional Conduct require more of counsel.

The dispute today illustrates the dangerous game attorneys play when they draft witness statements. Rather than having a witness draft his or her own statement using his or her own words, attorneys try to gain an advantage in litigation by characterizing a witness's statement for a particular purpose. When attorneys engage in this game, they risk turning themselves into witnesses. Any advantage gained is not worth the risk.

Considering the record before the Court at this time, the Court declines to grant Defendants' motion.  Both parties, however, are now on notice that such conduct will not be tolerated in the future.

## CONCLUSION

As a final matter, Defendants' motion for sanctions illustrates just how acrimonious this case has become.  At the start of oral argument, the Court expressed its disapproval of the lack of civility expressed in the parties' motion papers and noted that such tone is rarely seen in federal court.  Any motion for sanctions naturally elicits strong reactions and vigorous arguments.  In advancing such arguments, however, Eniva's counsel failed to heed the Court's warning about the lack of civility.  Instead, while referring specifically to the Court's comment, it described Defendants' counsel as an "attack dog," whose argument was "a bunch of crap."

"Courts have a responsibility not to permit attorneys to ignore the concept of civility when its disregard may hinder the quest for justice."  *Jaen*, 157 F.R.D. at 152-153 (engaging in a through analysis of the lack of civility in civil court).   Recognizing this responsibility, the Court again puts Eniva (and Defendants) on notice that the utmost civility will be expected in future proceedings.

For the reasons stated above, **IT IS HEREBY ORDERED THAT**:

1.      Global Water Solutions, Inc. and Norland International, Inc.'s Motion for Summary Judgment (Doc. No. 27) is **DENIED**.

2.      Global Water Solutions, Inc. and Norland International, Inc.'s Motion to Exclude Plaintiff's Expert Reports (Doc. No. 52) is **DENIED AS MOOT.**

     3.     Global Water Solutions, Inc. and Norland International, Inc.'s Motion for

Sanctions (Doc. No. 31) is **DENIED.**


Dated:  July 13, 2006          <u>s/Donovan W. Frank</u>
                             DONOVAN W. FRANK
                             Judge of United States District Court